AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

_____ **DISTRICT OF** Massachusetts _____

UNITED STATES OF AMERICA

### V.

Vanderly Pereira
353 Market Street
Brighton, MA

## CRIMINAL COMPLAINT

(Name and Address of Defendant)

CASE NUMBER: *MJ04-M-272 JLA*

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about _____10/12/04 through 11/9/04_____ in _____Suffolk_____ county, in the

_____ District of _____Massachusetts_____ defendant(s) did, (Track Statutory Language of Offense)

knowingly transfer false identification documents, knowing that such documents were produced without lawful authority

in violation of Title_____18_____ United States Code, Section(s) _____1028(a)(2)_____.

I further state that I am a(n)_____Special Agent_____ and that this complaint is based on the following
                                        Official Title

facts:

See attached affidavit

Continued on the attached sheet and made a part hereof:     ☒ Yes     ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

_____11 / 18 / 04_____     at     _____Boston, MA_____
Date                                                              City and State

Joyce London Alexander
U.S. Magistrate Judge                          _____
Name & Title of Judicial Officer                Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## AFFIDAVIT OF SPECIAL AGENT DANA FIANDACA

I, Dana Fiandaca, having been duly sworn, do hereby depose and state as follows:

1. I am a Special Agent with the United States Immigration and Customs Enforcement ("ICE"), formerly the United States Immigration and Naturalization Service ("INS"), and have been so employed since June 1996. Among other duties, I am assigned to investigate the manufacture and sale of fraudulent Immigration and Naturalization Resident Alien Cards, Form I-551 (hereinafter "green cards"). From my training, I know that persons, usually aliens, manufacture and distribute counterfeit green cards and social security account number cards ("SSANC") and other false identification documentation. The counterfeit documents are then distributed and sold to aliens who are illegally in the United States. I am familiar with the various criminal statutes which make it unlawful to manufacture and sell green cards, including Title 18, United States Code, Section 1028(a)(1)-(6) (producing identification and false identification documents); and Title 18, United States Code, Section 1426(b) (using and selling false naturalization, citizenship and registry documents).

2. This affidavit is based on my personal knowledge, information provided to me by other law enforcement officers and ICE agents, as well as information provided to me by a

Confidential Source ("CS"). This affidavit is not intended to set forth all of the information that I and other law enforcement personnel have learned during this investigation, but is submitted in support of an application for a criminal complaint against **Vanderley PEREIRA ("PEREIRA") a/k/a Vanderley Pereria a/k/a Vanderlei Pereira a/k/a "Vanderly"**, charging him with a violation of 18 U.S.C. Section 1028(a)(2).

This affidavit is also submitted in support of an application for a search warrant for the following premises: Apartment #2 located within 353 Market Street in Brighton, Massachusetts.

**DESCRIPTION OF PREMISES TO BE SEARCHED:**

3.    353 Market Street in Brighton, Massachusetts, is a three-story wooden framed structure. The outside of the residence is light blue in color with white trim. The house number 353 is clearly visible on the right side of the front door frame. Apartment #2 is located within 353 Market Street. According to the notation on the buzzer next to the front door, there is a basement apartment and Apartment #1 and then Apartment #2.[1]

---

[1]According to Assessor's Office for the City of Boston, the structure is listed as a two-family house with a basement.

4.    I seek a search warrant for the above-described
residence because I have probable cause to believe that there are
presently located within the residence, physical and documentary
evidence, including, but not limited to, computers, computer
systems, color copier, blank and or typewritten counterfeit green
cards, blank or typewritten counterfeit social security account
number cards, and other blank identification documents,
typewriters, typewriter ribbons and/or cartridges, plastic
laminators, plastic laminate, paper cutters, scissors, glue, ink
pads, notebooks, journals, address books, customer lists and/or
records listing names, dates, numbers, cash payments, cash, and
other pertinent equipment and documents pertaining to the
possession, production and transfer of counterfeit identification
documents, which are the fruits, instrumentalities and evidence
of crimes in violation of 18 U.S.C. Section 1028(a)(1) and 18
U.S.C. Section 1426(b).

_BACKGROUND:_

5.    In July 2004, the Boston ICE Office received information
from ICE Confidential Source Number SA-576-BO (hereinafter "CS")
regarding a Brazilian male named "Vanderly" Last Name Unknown,
subsequently identified as PEREIRA, who was allegedly selling
fraudulent green cards and social security cards to illegal
aliens. The CS has previously furnished information to law

3

enforcement, which has been verified to be reliable and accurate in fraudulent document investigations and other immigration violations.

6.  According to the CS, PEREIRA sells the aforementioned documents for approximately $250.00 per set (a set includes one green card and one social security card). The CS provided a cellular number of (781) 367-1569 as the way to contact PEREIRA for the documents.

7.  Subsequent record checks with the cellular phone carrier Sprint Spectrum revealed that the target cellular phone number (781) 367-1569 is listed to a Vanderlei Pereira, Date of Birth: 05/05/71; with a residential address of 39A Highland Avenue in Everett, Massachusetts.

8.  On October 1, 2004, at approximately 2:13 p.m., your affiant, along with ICE Special Agent Randy Reeves, met the CS for the purpose of making a consensually monitored and recorded call to PEREIRA. The CS made contact with PEREIRA at (781) 367-1569 and inquired about obtaining a fraudulent green card and social security card. According to the CS, PEREIRA agreed to accommodate the request, quoted the CS a price of $250.00 for the set. PEREIRA also claimed that he could deliver the completed documents the same day that they were ordered. The CS agreed, and

4

stated that he/she would be in touch. The call was then

terminated.

### THE DOCUMENT PURCHASES

9.    On October 12, 2004, at approximately 10:33 a.m.,  your

affiant met with the CS in Revere, Massachusetts for the purpose

of making a consensually monitored and recorded

call to PEREIRA. The CS made contact with PEREIRA at cellular

number (781) 367-1569 and placed an order for one (1) counterfeit

green card and one (1) counterfeit social security card.

According to the CS, PEREIRA agreed to accommodate the request.

Based on the call, a meeting was scheduled for 11:45 a.m. at the

Super Stop and Shop located at 540 Squire Road in Revere,

Massachusetts. The call was then terminated.

10.    At approximately 10:50 a.m., ICE agents met with the CS

in Revere, Massachusetts to prepare for the planned undercover

meeting with PEREIRA. During the briefing, ICE agents performed

an integrity search of the CS and the CS' vehicle. In addition,

your affiant provided the CS with one (1) green card style photo

and the fictitious name and date of birth. Lastly, an electronic

transmitter and recorder were placed on the CS to record the

meeting.

11.    At approximately 11:20 a.m., ICE agents arrived in the

vicinity of the Super Stop and Shop located on Squire Road and

established stationary surveillance positions to await PEREIRA'S arrival.

12.  At approximately 11:33 a.m., the CS was observed arriving at the Super Stop and Shop and parking in the lot (remaining in his/her vehicle). The CS was escorted to the lot by Special Agent Augusto DaCunha.

13.  At approximately 11:53 a.m., PEREIRA was observed arriving in the Super Stop and Shop parking lot, operating a white Toyota Tercel, bearing Massachusetts Registration 8791DE. PEREIRA entered the lot and parked his vehicle approximately fifty yards from the CS' vehicle. The CS then was observed exiting his/her vehicle and proceeding to PEREIRA'S vehicle, stopping by the open driver's side window.

14.  According to the CS, he/she handed PEREIRA the green card style photo with accompanying biographical information, which was contained in a white envelope. PEREIRA removed the photo from the envelope and inspected the information on the back of the photo. PEREIRA informed the CS that the documents would be completed and ready for delivery at approximately 3:00 p.m. The CS agreed, and terminated the meeting at approximately 11:55 a.m. ICE agents activated a mobile surveillance of PEREIRA to document his activities.

15.  From the Super Stop and Shop parking lot, agents followed PEREIRA directly back to 353 Market Street in Brighton, Massachusetts, where he arrived at approximately 12:36 p.m. Your affiant observed PEREIRA enter the front door of 353 Market Street and proceed out of view. PEREIRA is 25-30 years of age; medium height and weight and having black hair. He was observed wearing a blue baseball cap, black jacket and dark pants.

16.  At approximately 2:16 p.m., the CS made a consensually monitored and recorded call to PEREIRA to check on the status of the documents.  According to the CS, PEREIRA stated that the documents would be completed within one half hour. He further stated that he did not want to meet with the CS in the Super Stop and Shop parking lot, because it was the lot was too open. PEREIRA informed the CS that he would call the CS back with an alternate meet location. The CS agreed, and terminated the call.

17.  At approximately 2:37 p.m., ICE Special Agent Matthew McCarthy observed PEREIRA exit the front door of 353 Market Street and proceed to his vehicle.  He was then observed departing in his vehicle, headed toward Soldiers Field Road. ICE agents activated a mobile surveillance to document PEREIRA'S activities.

18.  At approximately the same time, your affiant met with the CS to prepare for the anticipated meeting with PEREIRA.

During the briefing, and integrity search of the CS and CS' vehicle was performed. In addition, the CS was provided with $250.00 of official funds, which was to be given to PEREIRA in exchange for the documents. Lastly, and electronic transmitter and recorder was placed on the CS to record the meeting.

19.   At approximately 2:43 p.m., the CS arrived in the Super Stop and Shop parking lot on Squire Road (remaining in vehicle) to await PEREIRA'S arrival. The CS was escorted to the lot by your affiant.

20.   At approximately 3:20 p.m., PEREIRA was observed entering the Super Stop and Shop parking lot and parking next to the CS' vehicle. Several seconds later both the CS' vehicle and PEREIRA'S vehicle exited the parking lot and proceeded to Hy-Sil Avenue in Revere, MA, pulling over on the side of the road directly under an overpass at approximately 3:26 p.m. The CS was then observed exiting his/her vehicle and entering PEREIRA'S vehicle, which proceeded approximately fifty yards to a parking lot area. It should be noted, during the surveillance of PEREIRA from 353 Market Street to the Super Stop and Shop parking lot, he was not observed making any stops.

21.   Once in the parking lot, and still in PEREIRA'S vehicle, PEREIRA had the CS place his/her signature and fingerprint on the partially laminated green card. Once the CS

8

provided the signature and print, PEREIRA completed the
laminating process of the green card. In exchange for the green
card and social security card, the CS handed PEREIRA the $250.00
of official funds. After a brief conversation about future
document orders, which PEREIRA agreed to accommodate, the meeting
was terminated at approximately 3:30 p.m.

22.   Shortly after the meeting, agents met with the CS for
debriefing and to take custody of the documents. A closer
examination of the documents purchased by the CS, revealed that
the photo which appeared on the counterfeit green card, was the
same photo your affiant provided to the CS earlier. The name on
the documents purchased is Luis Santos. Also during the
debriefing of the informant, your affiant showed the CS a digital
image of a Massachusetts Driver's License ("MDL") of a Vanderley
PEREIRA (MDL# 332338315), which was obtained from the
Massachusetts Registry of Motor Vehicles. According to the CS,
the person contained in MDL# 332338315 (PEREIRA) is the same male
he/she knows as "Vanderly" and from whom the CS obtained the
aforementioned counterfeit green card and social security card.
The information contained on MDL# 332338315 is as follows:
Vanderley PEREIRA; Date of Birth 05/05/71; with a residential
address of 39A Highland Avenue Apartment #2 in Everett,
Massachusetts. The image date of this license is May 3, 2000.

9

23.  On October 15, 2004, your affiant, along with Special
Agent McCarthy met with the CS in Revere, Massachusetts to show
him/her a  Digital Image of a MDL Number S59065018 for a
Vanderley PERERIA. According to the Registry of Motor Vehicles,
this second MDL is listed as the registered owner of the white
Toyota Tercel PEREIRA was seen operating on October 12, 2004.
According to the CS, the person contained in MDL# S59065018
(PERERIA) is the same male he/she knows as "Vanderly" and from
whom the CS obtained the aforementioned counterfeit green card
and social security card. The information contained on MDL#
S59065018 is as follows: Vanderley PERERIA; Date of Birth
05/05/71; with a residential address of 353 Market Street
Apartment #2 in Brighton, Massachusetts. The image date of this
license is August 22, 2002. Furthermore, the white Toyota Tercel,
bearing Massachusetts Registration 8791 DE is registered to
PERERIA at 353 Market Street Apartment #2 in Brighton,
Massachusetts.

24.  Based on the two identifications by the CS of PEREIRA,
it appears that PEREIRA has two different MDL's, one under the
name of  PEREIRA (332338315) and the other under PERERIA
(S59065018).

24.  On November 8, 2004, at approximately 1:12 p.m., your
affiant along with Special Agent McCarthy met with the CS for the

10

purpose of making a consensually monitored and recorded call to
PEREIRA. The CS made contact with PEREIRA at cellular number
(781) 367-1569 and placed an order for two (2) sets of
counterfeit green cards and social security cards. According to
the CS, PEREIRA agreed to accommodate the request. Based on the
call, a meeting was scheduled for 10:00 a.m. at the Dunkin Donuts
located at 649 Squire Road in Revere, Massachusetts.  The call
was then terminated.

25.  On November 9, 2004, at approximately 9:15 a.m., ICE
agents met with the CS in Revere, Massachusetts to prepare for
the planned undercover meeting with PEREIRA.  During the
briefing, ICE agents performed an integrity search of the CS and
the CS' vehicle.  In addition, your affiant provided the CS with
two (2) green card style photos and the fictitious names and
dates of birth.  Lastly, an electronic transmitter and recorder
were placed on the CS to record the meeting.

26.  At approximately 9:30 a.m., ICE agents arrived in the
vicinity of the Dunkin Donuts on Squire Road and established
stationary surveillance positions to await PEREIRA'S arrival.

27.  At approximately 9:40 a.m., the CS was observed
arriving at the Dunkin Donuts and parking (remaining in vehicle).
The CS was escorted to the lot by Special Agent McCarthy.

11

28.  At approximately 10:11 a.m., PEREIRA was observed arriving at the Dunkin Donuts parking lot and meeting with the CS. He was observed exiting his vehicle and entering the CS' vehicle. PEREIRA was observed wearing a brown jacket and tan pants.

29.  According to the CS, while in the vehicle, he/she handed PEREIRA the two green card style photos with accompanying biographical information. PEREIRA advised the CS that he would call him/her once the documents were completed and ready for delivery. PEREIRA also stated that he would meet the CS at the Fleet Bank located at the corner of Beach Street and Route 60 in Malden, Massachusetts for the document transaction. The CS agreed, and terminated the meeting at approximately 10:17 a.m. PEREIRA exited the CS' vehicle and departed in his own. Agents then activated a mobile surveillance to document his activities.

30.  PEREIRA was followed by agents directly back to 353 Market Street in Brighton, Massachusetts, arriving at approximately 10:55 a.m. PEREIRA was observed entering the front door of 353 and proceeding out of view.

31.  At approximately 1:52 p.m., the CS made a consensually monitored and recorded call to PEREIRA to check on the status of the documents. According to the CS, PERERIA stated that the

12

documents were completed, and that he would meet with the CS in
thirty minutes. The CS agreed, and terminated the call.

32. At approximately 2:00 p.m., PEREIRA was observed
exiting 353 Market Street and entering his vehicle. He the
departed the area, proceeding toward Soldiers Field Road. Agents
activated a mobile surveillance to documents PEREIRA'S
activities.

33. At approximately 2:05 p.m., your affiant met with the
CS to prepare for the anticipated meeting with PEREIRA.  During
the briefing, and integrity search of the CS and CS' vehicle was
performed. In addition, the CS was provided with $500.00 of
official funds, which was to be given to PEREIRA in exchange for
the documents. Lastly, and electronic transmitter and recorder
was placed on the CS to record the meeting.

34. At approximately 2:25 p.m., the CS arrived in the Fleet
Bank parking lot on Beach Street in Malden, Massachusetts
(remaining in vehicle) to await PEREIRA'S arrival. The CS was
escorted to the lot by your affiant.

35. At approximately 2:48 p.m., PEREIRA was observed
arriving at the Fleet Bank parking lot and parking next to the
CS. It should be noted, PEREIRA was followed directly from 353
Market Street to the Fleet Bank parking lot by agents. The CS was

13

then observed exiting his/her vehicle and entering PEREIRA'S,
which then departed the lot.

36.    PEREIRA and the CS were then surveilled down Beach
Street to Lawrence Street in Malden, Massachusetts, where it
pulled over on the side of the road at approximately 2:51 p.m.
According to the CS, while in the vehicle, PEREIRA produced the
counterfeit green cards and social security cards, and instructed
him/her provide a signature and fingerprint sample on the un-
laminated green cards, which the CS proceeded to do. Once the CS
provided the samples, PEREIRA laminated both green cards and
handed the documents to the CS. In exchange, the CS handed
PEREIRA the $500.00 of official funds. After a brief
conversation, the meeting was terminated at approximately 2:57
p.m. PEREIRA then drove the CS back to his/her vehicle and
departed the area at approximately 2:59 p.m.

37.    Shortly after the meeting, agents met with the CS for
debriefing and to take custody of the documents. A closer
examination of the documents purchased by the CS, revealed that
the photos which appeared on the counterfeit green cards, were
the same photos your affiant provided to the CS earlier. The
names on the documents purchased are Ana Santos and Maria C.
Gomes.

14

38.   In sum I have received a total of six (6) documents from all of the aforementioned undercover purchases.  I have reviewed the documents and have determined that they are counterfeit identification documents.  A review of records of ICE and the Social Security Administration, reveals that the green card alien registration numbers and SSANC numbers of the documents purchased are either invalid, or belong to an individual other than the person listed on the documents.

39.   Furthermore, based on my training and experience, I believed that all of the above-mentioned documents purchased by the CS were generated by use of a computer printer and scanner. The font present on the counterfeit document appears to be smooth and with equal ink distribution, characteristic with that of an ink jet printer. Also, the photo, which is present on the counterfeit green cards, seems to have been scanned into the template green card, a common practice in the manufacture of counterfeit identification cards that require a photo of a person.

**ITEMS TO BE SEIZED:**

40.   Based on my experience in this and other fraudulent document investigations, I am familiar with the tools, equipment and materials necessary for the manufacture of counterfeit green cards and social security cards. I am aware that the common types

of tools, equipment and materials used in the manufacturing of said documents are a computer, computer printer, computer document scanner, color copier, type writer, plastic laminate, a sealing mechanism, ink pads, blank alien registration cards and blank social security cards.

41.    For the purpose of this affidavit, the term "computer" refers to the box that houses the central processing unit ("CPU") along with any internal storage devices such as internal hard drives and internal communication devices (such as internal modems capable of sending/receiving electronic mail or FAX cards, along with any other hardware, software, and data contained in the main unit. Printers, external modems (attached by cable to the main unit), monitors, scanners and other external attachments will be referred to collectively as peripherals. When the computer and all peripheral are referred to as one package, the term "computer system" is used. Information refers to all the information on a computer system, including both software and applications and data.

42.    Based upon the foregoing, I believe that there is probable cause to believe that the physical and documentary evidence, including, but not limited to, computers, computer systems, blank and/or typewritten counterfeit green cards, blank and/or typewritten social security account number cards, blank

16

international drivers licenses and any other blank identification
documents, type writers, typewriter ribbons and/or cartridges,
plastic laminators, plastic laminate, paper cutters, scissors,
glue, inkpads, notebooks, journals, address books, customer lists
and /or records listing names, dates, numbers, cash payments,
cash and other pertinent equipment and documents pertaining to
the possession, production and transfer of counterfeit
identification documents, which are the fruits, instrumentalities
and evidence of crimes in violation of 18 U.S.C. Section
1028(a)(1) through (a)(6) and 18 U.S.C. Section 1426(b) can be
located at the premises described as Apartment 2 of 353 Market
Street in Brighton, Massachusetts.

### CONCLUSION:

43.  Based on the foregoing, information, I believe probable
cause exists to conclude that Vanderley PEREIRA, on October 12,
2004 and again on November 9, 2004, did, knowingly and without
lawful authority, transfer false identification documents, in
violation of Title 18 U.S.C. Section 1028(a)(2), and did use and
sell, as true and genuine, false and forged documentary evidence
required or authorized by law relating to the registry of aliens

in false naturalization, citizenship and registry documents in
violation of 18 U.S.C. Section 1426(b).


_____
Dana Fiandaca
Special Agent
Immigration and Customs Enforcement


Subscribed and sworn before me this _18_ day of November, 2004


_____
JOYCE LONDON ALEXANDER
United States Magistrate Judge

18

JS 45 (5/97) - (Revised USAO MA 1/15/04)

**Criminal Case Cover Sheet**                    **U.S. District Court - District of Massachusetts**

**Place of Offense:** _____   **Category No.** II_____   **Investigating Agency** ICE_____

**City** Brighton_____   **Related Case Information:**

**County** Suffolk_____   Superseding Ind./ Inf. _____   Case No. _____
Same Defendant _____   New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number M J04-M-271 ILA
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name  Vanderly Periera _____   Juvenile ☐ Yes  ☒ No

Alias Name _____

Address   Apt. #2, 353 Market Street, Brighton, MA _____

Birth date (Year only): 1971  SSN (last 4 #): _____ Sex M Race: H_____  Nationality: Brazilian_____

**Defense Counsel if known:** _____   Address: _____

**Bar Number:** _____

**U.S. Attorney Information:**

AUSA  Nadine Pellegrini_____   Bar Number if applicable _____

**Interpreter:**  ☒ Yes ☐ No   List language and/or dialect:  Portuguese_____

**Matter to be SEALED:**  ☐ Yes  ☒ No

☒ Warrant Requested   ☐ Regular Process   ☐ In Custody

**Location Status:**

**Arrest Date:** _____

☐ Already in Federal Custody as _____ in _____.
☐ Already in State Custody _____  ☐ Serving Sentence  ☐ Awaiting Trial
☐ On Pretrial Release:  Ordered by _____ on _____

**Charging Document:**  ☒ Complaint  ☐ Information  ☐ Indictment

**Total # of Counts:**  ☐ Petty _____  ☐ Misdemeanor _____  ☒ Felony  1_____

**Continue on Page 2 for Entry of U.S.C. Citations**

☒   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date:  11/18/04        Signature of AUSA: _[signature]_

JS 45  (5/97) - (Revised USAO MA 3/25/02)  Page 2 of 2 or Reverse

**District Court Case Number**  (To be filled in by deputy clerk): _____

**Name of Defendant** _____

### U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  18 USC 1028(a)(2) | Transfer of Fraudulent Documents | 1 |
| Set 2 | | |
| Set 3 | | |
| Set 4 | | |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

**ADDITIONAL INFORMATION:**